**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PERIDOT TREE, INC.; KENNETH GAY, | No. 22-16783 |
| *Plaintiffs-Appellants*, | D.C. No. 2:22-cv-00289-KJM-DB |
| v. | |
| CITY OF SACRAMENTO; DAVINA SMITH, | OPINION |
| *Defendants-Appellees*, | |
| and | |
| SACRAMENTO OFFICE OF CANNABIS MANAGEMENT, | |
| *Defendant*. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted November 15, 2023
San Francisco, California

Filed March 4, 2024

Before:  Sidney R. Thomas and Salvador Mendoza, Jr.,
Circuit Judges, and Solomon Oliver, Jr.,[*] District Judge.

Opinion by Judge Mendoza

## SUMMARY[**]

### Civil Rights/Abstention

In an action challenging the City of Sacramento's
requirement that individuals applying for permits to operate
storefront marijuana dispensaries within city limits be
Sacramento residents, the panel reversed the district court's
decision to abstain from exercising jurisdiction over
plaintiff's dormant Commerce Clause claim and remanded
for further proceedings.

The district court—concerned by the conflict between
state and federal law regulating marijuana use and
distribution and that it might have to apply constitutional
protections to federally unlawful conduct—abstained from
exercising jurisdiction over plaintiff's dormant Commerce
Clause claim, stayed the case, and directed plaintiff to seek
relief in California state court.

---

[*] The Honorable Solomon Oliver, Jr., United States Senior District Judge
for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

Abstention is generally permitted only in exceptional circumstances when denying a federal forum would clearly serve an important countervailing interest.

The panel held that abstention was not warranted under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), which permits abstention when the resolution of a federal question might be obviated if the state courts were given the opportunity to interpret ambiguous state law. Given the clarity of Sacramento's residency requirement, precedent interpreting similar requirements, and the lack of state law issues that might narrow or moot the federal constitutional claim, plaintiff's suit does not meet the requirements of *Pullman* abstention.

The panel held that abstention was not warranted under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). California has not chosen to concentrate suits challenging administrative action in a particular court and plaintiff's claim did not resemble one asserting that a state agency had misapplied its lawful authority or failed to take into consideration or properly weigh relevant state-law factors. Instead, this case presents pronounced federal interests, implicating the substantial federal concern of whether the dormant Commerce Clause applies to conduct lawful under state law and unlawful under federal law.

The panel held that abstention was improper under *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959), because this lawsuit does not present a dispute between intra-governmental agencies or states, the city's residency requirement is straightforward, and no party has articulated a pressing sovereignty concern endangered by the dormant Commerce Clause analysis.

The panel held that abstention was not warranted under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because there is no concurrent state-court proceeding.

Finally, the panel declined Sacramento's invitation to invoke general comity principles to affirm the district court's decision. Plaintiff's suit exclusively presents a question of federal law. The district court's abstention and its expectation that plaintiff try its luck in state court did little to promote efficiency, comity, or federalism, and effectively imposed an exhaustion requirement on plaintiff.

---

## COUNSEL

Jeffrey M. Jensen (argued), Boesch Law Group, Santa Monica, California; Christian E. Kernkamp, Kernkamp Law APC, Los Angeles, California; for Plaintiffs-Appellants.

Lee H. Roistacher (argued), Dean Gazzo Roistacher LLP, Solana Beach, California; Grace L. Pak, Deputy City Attorney; Matthew R. Day, Senior Deputy City Attorney; Susan A. Wood, City Attorney; Sacramento City Attorney's Office, Sacramento, California; for Defendants-Appellants.

Arthur J. Wylene, General Counsel, Rural County Representatives of California, Sacramento, California; Jennifer B. Henning, Litigation Counsel, California State Association of Counties, Sacramento, California; for Amici Curiae California State Association of Counties and League of California Cities.

Patrick J. Hagan, Kabir Chopra, and Taylor C. Wagniere, Deputy City Attorneys; Hydee F. Soto, City Attorney; Los

Angeles City Attorney's Office, Los Angeles, California; for
Amici Curiae City of Los Angeles.

---

## OPINION

MENDOZA, Circuit Judge:

Peridot Tree, Inc. and its majority shareholder, Kenneth
Gay (together, "Peridot Tree"), filed suit against the City of
Sacramento and Davina Smith (collectively, "Sacramento")
over the city's requirement that individuals applying for
permits to operate storefront marijuana dispensaries within
city limits be Sacramento residents. Peridot Tree argues that
Sacramento's residency requirement violates the federal
Constitution's dormant Commerce Clause because it
impermissibly discriminates between residents and non-
residents, unduly restricting interstate commerce. The
district court—concerned by the obvious conflict between
state and federal law regulating marijuana use and
distribution; and that it might have to apply constitutional
protections to federally unlawful conduct—abstained from
exercising jurisdiction over Peridot Tree's constitutional
claim. To justify its abstention, the district court noted the
deep conflicts between state and federal marijuana law;
invoked an amalgam of the Supreme Court's abstention
decisions in *Pullman*, *Burford*, *Thibodaux*, and *Colorado
River* and their progeny; conceded that this case did not "fit
neatly" among them; and stayed the suit. In our view, the
district court rightly determined that this case does not meet
the requirements for abstention under any abstention
doctrine established by the Supreme Court. But it erred by

choosing to abstain anyway.  So we reverse its decision and
remand for further proceedings.

## I. Factual and Procedural Background

### A.

In 2016, California voters legalized recreational
marijuana use by adults through a constitutional ballot
initiative, commonly called "Proposition 64" or the "Adult
Use of Marijuana Act."  Control, Regulate and Tax Adult
Marijuana Act, 2016 Cal. Legis. Serv. A-92 (West).  In the
wake of Proposition 64, a new industry blossomed, and
many California counties and cities—including its capital,
Sacramento—passed ordinances and resolutions to regulate
the production, sale, and purchase of recreational marijuana.
Some of these ordinances sought to prevent state-level
legalization from harming local communities, and they
implemented policies to avoid marijuana revenue funding
gang activity or marijuana use contributing to impaired
driving.  *See, e.g.*, San Jose, Cal., 6 Bus. Licenses & Regs.
ch. 6.88.010 (2019).  Others sought to transition existing
medical-marijuana infrastructure into recreational
businesses.  *See, e.g.*, Oakland, Cal. Code § 5.80.110 (2018)
("Any permit issued . . . may be utilized for medical or
adult-use purposes.").  And some aimed to expand equitable
access to the marijuana industry by providing unique
opportunities and programming to those negatively affected
by marijuana's past criminalization.  *See* Coachella, Cal.,
Res. 2019-15 (Mar. 27, 2019); *see also* Humboldt County,
Cal., Ordinance 2623 (Mar. 19, 2019).

One such program is at issue here: Sacramento's 2018
"Cannabis Opportunity Reinvestment and Equity," or
"CORE," Program.  *See* Sacramento, Cal., Res. 2018-0323
(Aug. 9, 2018).  Designed to "address the negative impacts

of disproportionate enforcement of cannabis related regulation," the CORE Program seeks to reduce "barriers of entry" to the marijuana industry for those "negatively impacted" by past marijuana prosecution and criminalization. *Id.* It offers business and development resources to eligible CORE Program participants, including coaching, criminal-record expungement, business-needs and loan-readiness assessments, and courses in regulatory compliance. *Id.* And it provides unique economic opportunities to qualifying participants in the city's burgeoning recreational- and medical-marijuana industry. Sacramento, Cal., Res. 2020-0338 (Oct. 13, 2020).

To be a CORE Program participant, an individual must meet one of two "classifications": [1]

> **Classification 1.** A current or former resident of the City of Sacramento who previously resided or currently resides in a low-income household and was either [sic]: a) arrested or convicted for a cannabis related crime in Sacramento between the years 1980 and 2011; or is b) an immediate family member of an individual described in subsection a of Classification 1 or Classification 2.

> **Classification 2.** A current or former resident of the City of Sacramento who has lived in a low-income household for at least

---

[1] Different classifications govern a business's ability to participate in the CORE Program, but those classifications are irrelevant to Peridot Tree's suit.

> five (5) years, between the years of 1980 and
> 2011 in [listed zip codes].

Both CORE Program classifications 1 and 2 facially require
participants to be current or former Sacramento residents.

After adopting and implementing its CORE Program,
Sacramento's City Council set aside ten "storefront cannabis
dispensary permits," and invited classification 1 and 2
participants, and only those participants, to apply for them.
*See* Sacramento, Cal., Res. 2020-0338 (Oct. 13, 2020). By
city ordinance, such a permit is needed to operate a
storefront cannabis dispensary within city limits, and
Sacramento caps the number of active permits at forty. *See*
Sacramento, Cal., Code § 5.150.350. At the time it opened
the permitting application to classification 1 and 2 CORE
Program participants, thirty of those licenses had already
been issued. Thus, Sacramento restricted access to the
remaining ten permits exclusively to qualifying CORE
Program participants.

Peridot Tree and its majority shareholder, Mr. Gay,
applied for one of those ten storefront cannabis dispensary
permits. Despite being a member of a low-income
household and having been convicted of a marijuana crime
between 1980 and 2011, Mr. Gay is not and has never been
a resident of Sacramento; he is a citizen of Michigan. He is
also not a CORE Program participant. When Sacramento
announced the winners of the permit-application process,
Peridot Tree and Mr. Gay were not among them. Instead, all
ten permits allegedly went to businesses "affiliated with
individuals who have resided in Sacramento," and were
classification 1 or 2 CORE Program participants.

So Peridot Tree sued Sacramento in federal court under 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for violating the dormant Commerce Clause. Among other things, Peridot Tree notes that Sacramento's CORE Program and permitting scheme allow only "current or former resident[s] of the City of Sacramento" to apply for storefront cannabis dispensary permits. According to Peridot Tree, this requirement unconstitutionally discriminates between resident and nonresident applicants, unduly burdening interstate commerce. Peridot Tree seeks injunctive, declaratory, and monetary relief.

**B.**

Peridot Tree's suit against Sacramento under the dormant Commerce Clause does not grow in a vacuum. Instead, its roots lie at the intersection of conflicting state and federal policies related to marijuana legalization, possession, production, and sale. For its part, California has long been at the vanguard of marijuana legalization in the United States. In 1996, California voters approved Proposition 215 and passed the "Compassionate Use Act," codified at Section 11362.5 of the California Health and Safety Code, which legalized marijuana for certain medical purposes. In response, cities like Sacramento issued medical marijuana storefront dispensary permits. Likewise, California's Proposition 64 and its ensuing regulations built on these early efforts, developing a "comprehensive" regulatory system to "control and regulate the cultivation, distribution, transport, storage, manufacturing, processing, and sale of nonmedical marijuana." Cal. Bus. & Prof. Code § 26000(b) (2016). California also amended various health and safety, labor, water, revenue and tax, and food agricultural codes to accommodate its new marijuana

industry. *See, e.g.*, Cal. Health & Safety Code § 11362.1
(2016); Cal. Water Code § 13276(a) (2016); Cal. Food &
Agric. Code § 81010(b) (2016).    Despite creating a
Department of Cannabis Control, California does not appear
to have created a dedicated administrative agency or judicial
tribunal to adjudicate marijuana-related disputes.    Other
states, many in California's wake, have also legalized
recreational and medical marijuana possession, use, and
distribution in different contexts. *See Gonzales v. Raich*, 545
U.S. 1, 5 & n.1 (2005); *see also* Lisa N. Sacco, Cong. Rsch.
Serv., IN11204, The Schedule I Status of Marijuana 1 (2022)
("[M]ost states and territories have deviated from across-the-
board prohibition of marijuana, and now have laws and
policies allowing for some cultivation, sale, distribution, and
possession of marijuana.").

By contrast, the federal government has given mixed
signals on the issue of recreational and medical marijuana
use.  In 1970, Congress passed the Controlled Substances
Act ("CSA"), which, among other things, made it unlawful
to "manufacture, distribute, or dispense" controlled
substances.  21 U.S.C. § 841(a).  One of those controlled
substances is marijuana, which Congress categorized as a
"Schedule I" drug, making its possession, manufacture, and
use a criminal offense.  *See* 21 U.S.C. § 812(c); *Raich*, 545
U.S. at 14.    Under the CSA, virtually any transaction
involving marijuana is unlawful, and violations of the CSA
come with stiff federal penalties, including hefty fines and
lengthy terms of imprisonment. *See* 21 U.S.C. §§ 811–12,
841(a)(1), 844(a); *Raich*, 545 U.S. at 14.    The Drug
Enforcement Administration ("DEA"), which enforces
federal controlled substances laws and regulations, has long
resisted efforts to reschedule marijuana because, according
to the DEA, marijuana "has a high potential for abuse, has

no currently accepted medical use, and lacks an accepted level of safety for use under medical supervision." Lisa N. Sacco, Cong. Rsch. Serv., IN11204, The Schedule I Status of Marijuana 2 (2022).[2]  The CSA remains good law.

Both the legislative and executive branches of the federal government, however, appear disquieted by the CSA's marijuana-based prohibitions. For its part, since December 2014, Congress has, through "congressional appropriations riders," "prohibited the use of any [Department of Justice] funds that prevent states with medical marijuana programs (including California) from implementing their state medical marijuana laws." *United States v. Kleinman*, 880 F.3d 1020, 1027 (9th Cir. 2017); Joanna R. Lampe, Cong. Rsch. Serv., LSB10694, Funding Limits on Federal Prosecutions of State-Legal Medical Marijuana 1 (2022). The Department of Justice, at the urging of various United States deputy attorneys general over the past decade and a half, has (1) generally "decline[d] to enforce" federal marijuana prohibitions in states that have legalized the drug, *Feinberg v. C.I.R.*, 808 F.3d 813, 814 (10th Cir. 2015); (2) advised local prosecutors not to devote resources to prosecute individuals for acts that comply with state drug laws, *see United States v. Canori*, 737 F.3d 181, 183–84 (2d Cir. 2013); and (3) noted that marijuana-enforcement priorities should focus on keeping marijuana revenue from making its

---

[2] Although the DEA has historically been reluctant to loosen federal restrictions on marijuana, on August 29, 2023, the Department of Health and Human Services ("DHS") issued a 252-page report to the DEA, recommending that marijuana "be controlled in Schedule III of the CSA" instead of Schedule I.  *See* Letter from Doctor Rachel L. Levine, Assistant Sec'y for Health, to The Honorable Anne Milgram, Adm'r, Drug Enf't Agency (Aug. 29, 2023).  As of the date of this opinion, the DEA has yet to formally respond to this recommendation.

way to criminal enterprises, Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice to All U.S. Att'ys (Feb. 14, 2014).  The Department of Justice has also issued guidance to states that have enacted laws authorizing cannabis-related conduct, counseling them to "implement strong and effective regulatory and enforcement systems that will address the threat those state laws could pose to public safety, public health, and other law enforcement interests." Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice to All U.S. Att'ys (Aug. 29, 2013).  And President Biden has pardoned U.S. citizens and lawful permanent residents who "committed the offense of simple possession of marijuana in violation of the Controlled Substances Act."  Proclamation No. 10467, 87 Fed. Reg. 61,441 (Oct. 6, 2022); *see also* Pres. Joseph R. Biden, Statement from President Biden on Marijuana Reform (Oct. 6, 2022) ("[N]o one should be in jail just for using or possessing marijuana.").

## C.

Put simply, the legal landscape governing recreational marijuana is in flux and hardly straightforward, and Peridot Tree's dormant Commerce Clause suit against Sacramento arguably arises in the gray area between competing state and federal laws. The district court—rightfully concerned (1) by the apparent conflict between federal and state marijuana laws; (2) by the chance that it might need to apply constitutional protections to federally unlawful conduct; or (3) that it may invalidate California's new regulatory regime for recreational marijuana—sua sponte asked the parties to consider the propriety of abstention.  In the order that followed, the district court noted that "[t]his case does not fit neatly within any single abstention doctrine the Supreme Court has recognized."  Nonetheless, it invoked the policies

and justifications underpinning many federal abstention doctrines—including those grounded in the Supreme Court's decisions in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*" abstention), *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ("*Burford*" abstention), *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ("*Thibodaux*" abstention), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*" abstention)— before abstaining anyway, staying the case, and directing Peridot Tree to seek relief in California state court.  Peridot Tree's appeal timely followed.

## II.  Standard of Review

We have jurisdiction over the district court's decision under 28 U.S.C. § 1291.  When reviewing a district court's decision to abstain, we tailor our standard of review to the abstention doctrine invoked.  In "most abstention cases," we apply a "modified abuse of discretion standard," where we first determine, de novo, "whether the requirements of abstention are satisfied." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 782–83, 789 (9th Cir. 2014).   If those requirements are not met, the district court has "little or no discretion" to abstain.  *Id.* at 782 (quoting *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987)).   But if they are met, then we review the decision to abstain for abuse of discretion.  *Id.*  Relevant here, we have applied the modified standard of review to abstention decisions under *Pullman*, *Burford*, and *Colorado River*.[3]   We have yet to squarely

---

[3] *See Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1147 (9th Cir. 2022) (considering *Pullman*); *United States v. Morros*, 268 F.3d 695, 703–05 (9th Cir. 2001) (considering *Burford*); *Am. Int'l Underwriters*

decide what standard of review to apply to district court decisions invoking *Thibodaux* abstention.[4] Given, however, that "[c]ourts and commentators alike are split on whether *Thibodaux* is a separate abstention doctrine, as opposed to a special form of *Burford* abstention," we apply our modified standard of review to *Thibodaux* abstention, too. *See Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 846 n.9, 848–49 (9th Cir. 2005) (citing *Thibodaux* and applying the modified abuse of discretion standard to *Burford* abstention); *City of Tucson v. U.S. W. Commc'ns, Inc.*, 284 F.3d 1128, 1133–34 (9th Cir. 2002) (reciting our modified standard, before addressing whether *Thibodaux* abstention, which the district court did not address, might "support the district court's decision to abstain").[5]    In

_____

*(Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1256 (9th Cir. 1988) (considering *Colorado River*).

[4] It appears that we have had few opportunities to address *Thibodaux* abstention, much less to consider what standard of review to apply to a district court's decision to abstain under its auspices. *See, e.g.*, *Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 846 n.9 (9th Cir. 2005); *Kern-Tulare Water Dist. v. City of Bakersfield*, 828 F.2d 514, 517 (9th Cir. 1987) (addressing *Burford* abstention and citing *Thibodaux* in support); *Midkiff v. Tom*, 702 F.2d 788, 800 n.3 (9th Cir. 1983) (Poole, J., concurring) ("[*Thibodaux*] is generally classified as within *Burford* abstention."), *judgment rev'd by Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984).

[5] In cases that precede the development of our modified standard of review, we imply, albeit in dicta, that *Burford* abstention and, by implication, *Thibodaux* abstention may be subject to an abuse of discretion standard. *See, e.g.*, *In re Eastport Assocs.*, 935 F.2d 1071, 1079 n.7 (9th Cir. 1991) (addressing whether the district court "should have abstained under [*Burford* and *Thibodaux*]," and concluding that "[t]hese doctrines raise no further grounds for finding an abuse of discretion" given the district court's decision not to abstain under a

addition, we have discretion to determine whether any of these abstention doctrines ought to apply, regardless of whether they were specifically invoked or raised by the parties. *See, e.g.*, *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 761 (9th Cir. 2021).

## III.  Discussion

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.  Both this court and the Supreme Court have long affirmed that "[d]istrict courts have an obligation and a duty to decide cases properly before them." *Tucson*, 284 F.3d at 1132; *see also Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (describing federal courts' obligation to adjudicate matters within their jurisdiction as "virtually unflagging" (quoting *Colorado River*, 424 U.S. at 817)).  Abstention is generally permitted only in "exceptional circumstances," when "denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1992) (citations omitted). Abstention remains, however, "an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a

---

broader state law); *Turf. Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 819–20 (9th Cir. 1982) (reviewing all abstention decisions "only for an abuse of discretion," and citing *Thibodaux* in support of its finding that *Burford* abstention was "inapplicable"); *Sederquist v. City of Tiburon*, 590 F.2d 278, 281 n.5 (9th Cir. 1978) ("The language of *Thibodaux* does, however, reinforce the wisdom of interfering with the abstention determination by the district judge only when there is an abuse of discretion.").   But these cases, despite mentioning *Thibodaux* and cursorily considering its implications, fail to apply *Thibodaux* abstention directly, do not address what to do when the requirements for abstention are not met, do not prescribe a standard of review for *Thibodaux* abstention cases, and appear obviated by our later decisions addressing the appropriate standard of review for *Burford* abstention.

controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)); *see also Quackenbush*, 510 U.S. at 728 (characterizing *Burford* abstention, and summarizing established abstention doctrines).

The parties do not dispute that the district court has jurisdiction over Peridot Tree's lawsuit.  On appeal, Peridot Tree argues that its claims under the dormant Commerce Clause do not present the type of "exceptional circumstances" warranting abstention.  Not only are the established federal abstention doctrines cited by the district court an imperfect fit, but none of them apply, and Peridot Tree urges us not to craft a new abstention doctrine to fit this case.  For its part, Sacramento maintains that the federal abstention doctrines are an imperfect fit because so many apply, and it contends that *Pullman* abstention and principles of comity justify the district court's decision.  After considering the propriety of *Pullman*, *Burford*, *Thibodaux*, and *Colorado River* abstention, as well as abstention on generalized "comity" grounds, we agree with Peridot Tree.

## A.

### 1. *Pullman* abstention

*Pullman* does not support the district court's abstention. Under the *Pullman* abstention doctrine, "federal courts have the power to refrain from hearing cases" when "the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *Quackenbush*, 517 U.S. at 716–17.  Like its brethren, "*Pullman* abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy." *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (alterations and quotation

marks omitted).    We consider *Pullman* abstention appropriate if: "(1) there are sensitive issues of social policy 'upon which the federal courts ought not to enter unless no alternative to its adjudication is open,' (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain."    *Id*. (citation omitted).   At bottom, *Pullman* counsels that when "a federal court can avoid a constitutional determination by allowing a state court to construe state law, the federal court should abstain."  *Am. Int'l Underwriters*, 843 F.2d at 1257. Peridot Tree's dispute satisfies *Pullman* abstention's first requirement, but it fails to meet its second and third requirements.

**i.**

Peridot Tree's suit touches on sensitive issues of social policy.  This court has not had the opportunity to address the sensitivity of city-sponsored, business-development strategies designed to lessen the effects of a state's past criminalization of drug-related conduct.  But we have held that "land use planning is a sensitive area of social policy," *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983), and this case might touch on some aspects of land use.  After all, the city apportions permits to those who wish to open storefront dispensaries within city limits (although such apportionment is hardly akin to the zoning-style considerations that we traditionally call "land use").  It is also "well settled that the State has broad police powers in regulating the administration of drugs by the health professions." *Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977). California has, of course, recognized the use of marijuana as a medical treatment under certain conditions (although the ordinance at issue is not one that regulates the administration of marijuana by health professionals).  *See* Cal. Health &

Safety Code § 11362.5.  And while Sacramento's ordinances are not criminal—an area traditionally considered an important state interest, *see Juidice v. Vail*, 430 U.S. 327, 335 (1977)—they are designed to alleviate the burdens imposed by previous criminal laws outlawing marijuana. Here, the city's interest in remedying the consequences of past marijuana criminalization, coupled with the state's interest in regulating its new, recreational marijuana industry, is broad and of sensitive state concern, so this first *Pullman* requirement is met.

### ii.

But it is unclear how Peridot Tree's dormant Commerce Clause claim could be avoided by a state-court ruling clarifying Sacramento's residency requirement for storefront marijuana dispensaries.  Generally, "[t]he assumption [that] justifies abstention is that a federal court's erroneous determination of a state law issue may result in premature or unnecessary constitutional adjudication, and unwarranted interference with state programs and statutes." *Pue v. Sillas*, 632 F.2d 74, 79 (9th Cir. 1980).  In *Zwickler v. Koota*, the Supreme Court reasoned that *Pullman* abstention is inappropriate when "state court construction cannot narrow [the state statute's] allegedly indiscriminate cast and render unnecessary a decision of [a plaintiff]'s constitutional challenge." *Id.* at 250.  By contrast, in *C-Y Development*, we affirmed a district court's decision to abstain because the plaintiffs, applicants denied building permits, improperly asked the federal court to resolve a mixture of state law and federal constitutional challenges to the city's permitting system.  703 F.2d at 376, 378.  In that case, resolution "of the[] state law questions could dispose of most of C-Y's federal constitutional claims," and abstention would thus "substantially narrow[] and refine[]" any remaining

"constitutional issues." *Id.* at 378–80. We similarly endorsed *Pullman* abstention in *Columbia Basin Apartment Ass'n v. City of Pasco*. 268 F.3d 791, 806 (9th Cir. 2001). That case turned on whether certain city ordinances permitted the issuance of administrative warrants, which involved "novel and uncertain questions of state law in light of the substantial differences between the Fourth Amendment and Art. 1, § 7 [of the state Constitution]." *Id.* at 806.

On balance, Peridot Tree's suit hews far more closely to the facts of *Zwickler* than *C-Y Development* or *Columbia Basin Apartment*. As in *Zwickler*, the district court stayed Peridot Tree's suit not so that a state court could clarify state law, but so that a "well-equipped" state court could "answer th[e] question" of "how to apply the [d]ormant Commerce Clause." As the Court in *Zwickler* emphasized, however, "abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." 389 U.S. at 251. Ultimately, "the 'recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law.'" *Id.* at 251–52 (quoting *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415–16 (1964)). Here, the district court construed the straightforward language in Sacramento's ordinance, easily determining that both CORE Program classifications "require applicants to be current or former Sacramento residents." And Sacramento concedes that "[n]o party argued, and the district court never found the residency requirement ambiguous." Thus, the district court improperly abstained.

In defense of the district court's decision to abstain, Sacramento relies on *Pullman* abstention because, given the chance, a state court might hold that its residency

requirement is unconstitutional under California's Constitution. This argument is somewhat surprising, given Sacramento's purported interest in preserving its regulations. At any rate, it only underscores the impropriety of abstention. "[W]here there is 'no apparent saving construction' on the face of the state law, abstention is unwarranted." *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 889 (9th Cir. 2011) (quoting *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987)). Sacramento does not argue that its ordinance can be "saved," i.e., that a state-court determination would result in a constitutional construction of its ordinance. It also does not claim that Peridot Tree's dormant Commerce Clause claim might be "moot[ed]," in whole or in part, by a state-court ruling. *C-Y Development*, 703 F.2d at 379. Instead, Sacramento suggests that its ordinance might be unconstitutional under both California and federal law. This renders Sacramento's proposed justification for abstention far afield from that recognized in *C-Y Development*, where a state-court determination would obviate most of the federal claims by adopting an interpretation of the ordinance that complies with the federal Constitution. *Id.* at 379–80. Nor does Sacramento's preferred flavor of abstention resemble the abstention we blessed in *Columbia Basin Apartment*, where the constitutionality of the city's ordinance would be measured against "qualitatively different" standards under the state constitution and the federal Constitution. 268 F.3d at 803 (quoting *City of Seattle v. McCready*, 868 P.2d 134, 137 (Wash. 1994)).

Indeed, California's Constitution appears to afford either co-extensive or lesser protections for interstate commerce than the federal Constitution. *Compare Ostrager v. State Bd.*

*of Control*, 99 Cal. App. 3d 1, 7 (1979) (applying rational-basis review to California constitutional claims based on the propriety of residency requirements in a state statute concerned with crime-victim benefits), *with Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. --, 139 S. Ct. 2449, 2461 (2019) (holding that residency requirements must be "narrowly tailored to 'advanc[e] a legitimate local purpose'") (alteration in original), *and City of Phila. v. New Jersey*, 437 U.S. 617, 624 (1978) ("[W]here simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected."). Both this court and the Supreme Court have long reasoned that abstention is unwarranted in such circumstances.   *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 n.4 (1984) ("[A]bstention is not required for interpretation of parallel state constitutional provisions."); *Pue*, 632 F.2d at 80 (noting "the distinction . . . between state constitutional provisions [that] are integrally related to the challenged state statutory scheme and those [that] simply mirror the federal [C]onstitution"); *cf. Columbia Basin*, 268 F.3d at 806 ("Because the Pasco Ordinance implicates a state constitutional provision that differs significantly from the Fourth Amendment, *Pullman* abstention is particularly appropriate.").

### iii.

Were this not enough, Sacramento's residency requirement for CORE Program participants, and its resulting effect on access to storefront dispensary permits, does not meet *Pullman*'s high bar for state law uncertainty. "An issue of state law is 'uncertain' if 'a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law.'" *Courtney v. Goltz*, 736 F.3d 1152, 1163 (9th Cir. 2013) (quoting *Pearl Inv. Co. v.*

*City and Cnty. of S.F.*, 774 F.2d 1460, 1465 (9th Cir. 1985)).
In *Slidewaters*, for example, we declined to apply *Pullman*
abstention because the case did "not present a close question
of state law." 4 F.4th at 761. Likewise, in *Hawaii Housing
Authority*, the Supreme Court found abstention unwarranted
because "the naked question, uncomplicated by [ambiguous
language], is whether the Act on its face is unconstitutional."
467 U.S. at 237 (quoting *Wisconsin v. Constantineau*, 400
U.S. 433, 439 (1971)) (alteration in original). Here, the
district court did not hold—and Sacramento does not
argue—that Sacramento's residency requirement is
particularly ambiguous. As noted above, all parties agree
that the residency requirement means exactly what it says.

Sacramento argues that Peridot Tree "purposefully
evaded" state-law uncertainty by filing a federal claim, and
it repeats that it is uncertain "whether the residency
requirement violates provisions of the California
Constitution or some other California law." But Sacramento
cites no case (nor have we found one) that requires a plaintiff
to fabricate a state-law claim—constitutional or otherwise—
to drum up uncertainty in an otherwise unambiguous statute.
Doing so conflicts with our determination that "[f]ederal
courts are not required to send a case to the state court if
doing so would simply 'impose expense and long delay upon
the litigants without hope of its bearing fruit.'" *Potrero Hills
Landfill*, 657 F.3d at 889 (quoting *Zwickler*, 389 U.S. at
251). Given the clarity of the city's residency requirement,
precedent interpreting similar requirements, and the lack of
state law issues that might narrow or moot the federal
constitutional claim, Peridot Tree's suit does not meet the
requirements of *Pullman* abstention.

## 2. *Burford* abstention

*Burford* abstention "is concerned with protecting complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 362 (1989). In *Burford*, the Supreme Court approved abstention from a Fourteenth Amendment challenge to the "reasonableness" of the Texas Railroad Commission's grant of an oil drilling permit. 319 U.S. at 332. Noting that Texas had both endowed the Commission "with principal responsibility for fact finding and for policy making" and, "[t]o prevent the confusion of multiple review," placed the authority to review Commission orders in a single set of state courts, the *Burford* court reasoned that abstention was merited to avoid disrupting the uniform review of Commission orders. *Id.* at 326–27. In a later decision considering *Burford*, the Court clarified that "[w]here timely and adequate state court review is available," district courts sitting in equity should abstain from "interfer[ing] with the proceedings or orders of state administrative agencies" under two conditions: "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *NOPSI*, 491 U.S. at 361 (quoting *Colorado River*, 424 U.S. at 814).

Synthesizing this guidance, "[w]e have required certain factors to exist before a district court can abstain under *Burford*." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 806

(9th Cir. 2002).   *Burford* abstention "is only appropriate" when:

> (1) [] the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) [] federal review might disrupt state efforts to establish a coherent policy.

*Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (quoting *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991)); *see also Blumenkron v. Multnomah Cnty.*, 91 F.4th 1303, 1312 (2024) (same).

Here, abstention under *Burford* is unwarranted.   From the start, it is unclear whether Sacramento's permitting process for storefront marijuana dispensaries qualifies as a "complex state administrative process[]" under *Burford*. *See NOPSI*, 491 U.S. at 362; *Tucson*, 284 F.3d at 1133 ("[W]e find no designation by Arizona's Constitution or statutes of any particular state court to review grants or denials of franchises within Arizona.").   But even assuming so, California has "not chosen to concentrate suits challenging the administrative action in a particular court," and thus, "the threshold requirements for the exercise of *Burford* abstention . . . have not been satisfied." *S. Cal. Edison*, 307 F.3d at 806.   Unlike in *Burford*, where "Texas had created a centralized system of judicial review of commission orders, which 'permit[ted] the state courts, like the Railroad Commission itself, to acquire a specialized knowledge' of the regulations and industry," *NOPSI*, 491 U.S. at 360

(discussing and quoting *Burford*, 319 U.S. at 327) (alteration in original), neither Sacramento nor California has designated a judicial body to handle recreational-marijuana permitting disputes. And Sacramento did not seek abstention in the first place, which might have reflected its interest in state-court review. Instead, the district court sua sponte ordered the parties to address abstention. *Cf. S. Cal. Edison*, 307 F.3d at 806 ("If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." (quoting *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977))). Thus, because there is no specialized forum for review of Sacramento's permitting decisions, we cannot conclude that "the availability of an alternative, federal forum" would frustrate any state or local purpose, which counsels against abstention under *Burford*. *See Quackenbush*, 517 U.S. at 725; *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991) ("The fact that California has not established a specialized court system to resolve disputes . . . convinces us that application of the *Burford* doctrine to this case is unwarranted.").

Further, Peridot Tree's suit "does not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state-law that must be untangled before the federal case can proceed.'" *NOPSI*, 491 U.S. at 361 (quoting *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963)). As discussed above, Sacramento's CORE Program, and its storefront-marijuana-dispensary permitting process, involve state interests. But those interests have little bearing on the issue here: whether a city's straightforward residency requirement conditioning the sale of federally unlawful

products violates the dormant Commerce Clause. Indeed, Peridot Tree's claim does not resemble one asserting that "a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors," which might warrant abstention. *See id.* at 362. Instead, this case presents "pronounced" federal interests, implicating the "substantial federal concern" of whether the dormant Commerce Clause applies to conduct lawful under state law and unlawful under federal law. *See Quackenbush*, 517 U.S. at 728. So we hold that abstention was improper under *Burford*.

### 3. *Thibodaux* abstention

Despite invoking *Thibodaux* abstention, the district court did not make an explicit case for its application. Nor does Sacramento, although amici California State Association of Counties and League of California Cities maintain that this "rarest of birds" is appropriate here. As with *Burford* and *Pullman* abstention, this case will not quietly roost with *Thibodaux*'s fowl.

The Supreme Court has "increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law." *Thibodaux*, 360 U.S. at 27 (citing *Pullman*, 312 U.S. at 499). When the issue "touche[s] upon the relationship of City to State" or "involve[s] the scope of a previously uninterpreted state statute which, if applicable, [is] of questionable constitutionality," district courts should "stay their proceedings pending the submission of the state law question to state determination." *Id.* at 28. *Thibodaux* "simply holds that actions in the federal courts are properly stayed in any case 'pending determination by a state court of decisive issues of state law' where the controlling statute is

of highly doubtful meaning." *Mach-Tronics, Inc. v. Zirpoli*, 316 F.2d 820, 826 (9th Cir. 1963) (quoting *Thibodaux*, 360 U.S. at 27); *see id.* at 827 (declining to abstain because "the state law is clear and readily ascertain[able]"). We have thus characterized *Thibodaux* as requiring abstention "where state law apportioning power between the city and the state was uncertain, and any decision by the federal district court would affect state sovereignty." *Tucson*, 284 F.3d at 1134.

As discussed above, Peridot Tree's case does not present complex issues of state law that are of questionable state constitutionality. And *Thibodaux* was a unique case. There, the plaintiff asked the district court to wade into an eminent-domain dispute, in which a previously uninterpreted Louisiana statute appeared to grant considerable power to a Louisiana city, contrary to the Louisiana Attorney General's protests otherwise. *Thibodaux*, 360 U.S. at 30. The Supreme Court thus reasoned that it was proper to ask a Louisiana state court to weigh in on this dispute between city and state, given that an "[i]nformed local court[] may find meaning not discernible to the outsider." *Id.* That is not the situation here. Peridot Tree's lawsuit presents no dispute between intra-governmental agencies or states, the city's residency requirement is straightforward, and no party has articulated a pressing sovereignty concern endangered by the dormant Commerce Clause analysis. *See Tucson*, 284 F.3d at 1134–35. Indeed, there is no underlying state law dispute at all—much less one that touches on a critical "sovereign prerogative." *Thibodaux*, 360 U.S. at 28. So *Thibodaux* abstention's requirements are also unmet.

## 4. *Colorado River* abstention

*Colorado River* does not provide a basis for abstention, either. *Colorado River* abstention accords "deference to

state court proceedings," *Travelers Indem. Co. v. Montana*, 914 F.2d 1364, 1367 (9th Cir. 1990), and it permits federal court abstention in the face of "*concurrent* federal and state proceedings," so long as certain pragmatic and doctrinal factors warrant such abstention, *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841–42 (9th Cir. 2017) (emphasis added); *see also Colorado River*, 424 U.S. at 814. Here, there is no concurrent state-court proceeding. Accordingly, *Colorado River* does not apply, and abstention cannot properly be invoked on this basis, either.[6]

\*     \*     \*

In sum, this case does not meet the requirements of any "abstention doctrine being invoked" and thus "[t]he district court has no discretion to abstain." *Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 939 (9th Cir. 2002); *see also C-Y Development*, 703 F.2d at 377 ("[T]here is little or no discretion to abstain in a case [that] does not meet traditional abstention requirements."); *Porter v. Jones*, 319 F.3d 483, 487 (9th Cir. 2003) (same).

## B.

We also decline Sacramento's invitation to invoke general "comity" principles to affirm the district court's decision.  At the outset, "[i]t is not clear to what extent comity remains an independent basis for abstention, available even when none of the settled comity-based abstention doctrines such as *Burford* and *Colorado River* apply." *Hawthorne Sav. F.S.B.*, 421 F.3d at 852; *see also*

---

[6] Abstention under *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) and *Younger v. Harris*, 401 U.S. 37, 43–44 (1971), two Supreme Court decisions that the district court also invoked, fails because there are no concurrent state-court proceedings.

*Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1230 (9th Cir. 2009) (expressing skepticism for "comity" abstention because "federal courts are nearly always obliged to exercise their jurisdiction absent some recognized basis for not doing so"). The Supreme Court has invoked "comity" and the "comity doctrine" sparingly, endorsing abstention over certain suits challenging "the constitutionality of state taxation of commercial activity" because it reflects "'a proper respect for state functions.'" *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010) (quoting *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981)); *see also Matthews v. Rodgers*, 284 U.S. 521, 525 (1932) (reasoning that the comity doctrine reflects the "proper reluctance" of federal courts "to interfere" with states' "fiscal operations," and the concomitant desire to show "scrupulous regard for the rightful independence of state governments").

That abstention doctrine, however, appears almost entirely cabined to suits that interfere with "the validity of state tax systems in federal courts," and only when the plaintiff has state-court "remedies [that] are plain, adequate, and complete,[] and may ultimately seek review of the state decisions in [the Supreme] Court." *Fair Assessment*, 454 U.S. at 116; *see also Direct Mktg. Ass'n v. Brohl*, 575 U.S 1, 15 (2015) (characterizing the "comity doctrine" as one counseling federal courts to avoid interfering "with the fiscal operations of the state governments" (quoting *Levin*, 560 U.S. at 422)); *Hibbs v. Winn*, 542 U.S. 88, 107 n.9 (2004) ("[T]his Court has relied upon 'principles of comity' [] to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or

countermand state tax collection." (citation omitted)).[7]  For
the most part, our comity-based abstention precedent is
similarly circumspect.  *See Fredrickson v. Starbucks Corp.*,
840 F.3d 1119, 1124 (9th Cir. 2016) ("In cases involving
state taxes, the comity doctrine establishes an even '[m]ore
embracive' prudential rule that federal courts should refrain
from hearing 'claims for relief that risk disrupting state tax
administration.'" (quoting *Levin*, 560 U.S. at 417) (alteration
in original)).  Two outliers, however, require our attention.
In *Noel v. Hall*, we noted in passing that "a federal court may
stay its proceedings based on comity even when none of the
abstention doctrines requires that it do so."  341 F.3d 1148,
1160 (9th Cir. 2003).  Likewise, in *City & County of San
Francisco v. Assessment Appeals Board for San Francisco,
No. 1*, we noted that "principles of comity" may warrant
abstention to permit the "state government" to "carry[] out
its governmental functions."  122 F.3d 1274, 1277 (9th Cir.
1997) (citing *Freehold Cogeneration Assocs., L.P. v. Bd. of
Regul. Comm'rs*, 44 F.3d 1178, 1187 n.6 (3d Cir. 1995)).

Despite invoking broad principles of comity drawn from
the Supreme Court's and other circuits' decisions following
*Younger* and *Pullman*, neither *Noel* nor *Assessment Appeals
Board* compels comity-based abstention in every suit that
touches on an area of state interest.  In *Noel*, we merely
considered whether abstention would accommodate or

---

[7] Our sister circuits agree.  *See City of Fishers v. DIRECTV*, 5 F.4th 750,
753–55 (7th Cir. 2021) (summarizing comity-based abstention under
*Levin* for disputes challenging state taxation); *Dorce v. City of New York*,
2 F.4th 82, 96 (2d Cir. 2021) ("Federal courts generally abstain from
cases that challenge state taxation schemes." (citation omitted));
*Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1344 (11th Cir.
2015) (characterizing *Levin* as focusing "more on the comity doctrine in
the context of federal challenges to state tax statutes").

facilitate "parallel state court litigation" and state-administrative proceedings involving the same parties. *See Noel*, 341 F.3d at 1154, 1160.    This follows rather unremarkably from the principles laid out in *Colorado River*. And *Assessment Appeals Board* presaged *Levin*, grappling with comity-based abstention in the context of challenges to state fiscal policy falling under 12 U.S.C. § 632 and the Tax Injunction Act.  122 F.3d at 1276, 1277–78.  Moreover, in rejecting abstention, the court in *Assessment Appeals Board* noted that "comity yields" when "important federal interests are at stake."   *Id.* at 1277–78 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)).

These comity considerations are not present here.  To start, no party argues that (1) Sacramento's regulations concerning storefront marijuana-dispensary permits fall within the domain of state fiscal operations and core functions, like those akin to taxation; or (2) abstention is warranted to accommodate a concurrent, state-court proceeding.  The district court abstained so that California's local experiment with legal marijuana might endure, free from interference by federal courts or the shifting landscape of federal marijuana laws.  And it abstained not in favor of an ongoing state-court action, but so that Peridot Tree might go to state court and manufacture a state-law claim.  *Levin*, *Noel*, and *Assessment Appeals Board* do not counsel us to bless abstention based solely on a state's vested interest in local, economic activity—even when that activity might be undermined by the application of federal law to federally unlawful commercial conduct.    Indeed, as *Assessment Appeals Board* notes, our courts have not shied away from deciding constitutional concerns raised by local regulations, particularly when those concerns are squarely within the federal courts' jurisdiction.  *See* 122 F.3d at 1278 (holding

that the district "lacked discretion to remand the case back to state court on the basis of comity" because the respondent had "an unfettered right under [federal law] to defend in federal court"); *see also Deakins*, 484 U.S. at 203 ("[F]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." (citation omitted)); *cf. Town of Lockport v. Citizens for Cmty. Action at the Local Level, Inc.*, 430 U.S. 259, 264 n.8 (1977) ("[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court.").  Accordingly, while a court need not cosplay as Procrustes when deciding whether to abstain, *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9 (1987), we decline to invent "some new, free-floating, comity-based abstention doctrine for cases of this ilk," *Hawthorne Sav.*, 421 F.3d at 852.  *See also Vasquez v. Rackauckas*, 734 F.3d 1025, 1039 (9th Cir. 2013) (affirming the district court's decision not to abstain under *Younger*, as well as its decision "declining to abstain from granting relief under general principles of comity and federalism").

Sacramento's reliance on out-of-circuit precedent—which the city argues blesses comity-based abstention—does not persuade us otherwise.  In each case cited, the court considered abstention because, like our decision in *Noel*, the underlying suit involved "parallel state and federal actions." *See Bacardi Int'l Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 14 (1st Cir. 2013) (affirming a stay for "more than simple parallel litigation," but because the state proceeding involved the same issues and parties, the state proceeding was filed first, and already well underway); *J.B. v. Woodard*, 997 F.3d 714, 721 (7th Cir. 2021) ("[The] complaint leaves us with the clear and unmistakable impression that [the plaintiff] seeks a favorable federal court judgment so that he

can use that judgment to influence ongoing state court decision making."); *Cruz v. Melecio*, 204 F.3d 14, 23 (1st Cir. 2000) (counseling abstention "until the proceedings presently pending before the Puerto Rico Supreme Court have run their course").**[8]**  That is not the case here.

Indeed, the district court's abstention and its expectation that Peridot Tree try its luck in state court does little to promote efficiency, comity, or federalism.  Instead, the district court effectively imposed an exhaustion requirement on Peridot Tree, requiring it to first identify and litigate potential state-law claims before raising its federal constitutional concerns.  We addressed a somewhat analogous situation in *Gearing v. City of Half Moon Bay*.  54 F.4th 1144, 1147–50 (9th Cir. 2022).  There, the plaintiffs sought to develop housing on their properties, only to have their development plan rejected by the city.  *Id.* at 1146–47.  The city then sought to acquire the plaintiffs' properties by offering to buy them, which the plaintiffs in turn rejected.  *Id.* at 1147.  So both parties went to court.  *Id.*  The plaintiffs sued in federal court, pursuing a regulatory-taking theory under 42 U.S.C. § 1983; the city initiated an eminent-domain action in state court; and the city asked the federal court to abstain under *Pullman* from considering the plaintiffs' regulatory-taking action.  *Id.* at 1147.  In response, the plaintiffs argued that *Pullman* abstention effectively and improperly required them to exhaust state-court remedies, "forc[ing] them to litigate their regulatory[-]taking claim as part of the state-court eminent[-]domain action before they

---

[8]  To be clear: we do not intend for our decision today to foreclose the possibility of abstention based on broader principles of comity, federalism, or equity.  We merely find that, here, the district court's abstention under those principles was improper.

c[ould] seek federal judicial review," which necessarily and
unfairly subsumed their federal claims.  *Id.* at 1149.  We
disagreed.  In affirming the district court's abstention, we
reasoned in part that: (1) the state-court eminent-domain and
federal-court regulatory-taking actions sought distinct
remedies; (2) resolution of the eminent-domain action might
narrow a later, regulatory-taking action, but it would not
preclude it; and (3) the plaintiffs had insulated their federal
claim from dismissal on preclusion grounds by making an
*England* reservation in state court.  *Gearing*, 54 F.4th at
1149–51 (citing *England*, 375 U.S. at 421).  So abstention
did not impose an unwarranted exhaustion requirement.

Not so here.  Unlike in *Gearing*, there is no ongoing
state-court proceeding to adjudicate independent state-law
claims with independent state-law remedies, which might
obviate or narrow Peridot Tree's federal claim.  Peridot
Tree's suit exclusively presents a question of federal law.
Thus, abstention here, as Sacramento concedes, results in
Peridot  Tree  (1) manufacturing  a  state-law  claim;
(2) protecting its dormant Commerce Clause claim with an
*England* reservation; and (3) upon the completion of its
state-court proceedings, returning to federal court with its
original complaint in hand, re-alleging its same dormant
Commerce Clause claim.[9]  In *Gearing*, abstention protected
the  district  court  from  deciding  "sensitive  federal
constitutional questions when state law issues" might narrow
them.  54 F.4th at 1147 (quoting *San Remo Hotel v. City &
Cnty. of S.F.*, 145 F.3d 1095, 1104 (9th Cir. 1998)).
Abstention here "accomplish[es] nothing except to require

---

[9] Of course, the district court also permitted Peridot Tree to remain
without a remedy, waiting until that court could "award relief consistent
with federal law."

still another lawsuit, with added delay and expense for all parties." *Cnty. of Allegheny*, 360 U.S. at 196 (declining to permit abstention). We see no reason to require that exercise in futility.

## C.

We understand the district court's hesitation to resolve whether the Constitution's dormant Commerce Clause prohibits Sacramento's alleged conduct, which may require venturing into the murky forests of state and federal recreational-marijuana law. Nor do we doubt that Peridot Tree's lawsuit presents "difficult" and significant questions. But as the Court wisely noted in 1821, "[q]uestions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Thankfully, the path is not entirely dark. The First Circuit, for example, recently affirmed that a Maine law—which required "officers or directors of a [medical-marijuana] dispensary" to be "residents" of Maine—violated the dormant Commerce Clause. *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542, 544 (1st Cir. 2022). And many district courts, including those within our circuit, have grappled with similar issues.[10] We trust the district court will do the same.

---

[10] *Compare Brinkmeyer v. Washington State Liquor & Cannabis Bd.*, 2023 WL 1798173, at \*11 (W.D. Wash. Feb. 7, 2023) ("The dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market and, thus, it does not apply to Washington's residency requirements.") *and Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Ctrl. Bd.*, 2024 WL 69733, at \*9 (W.D. Wash. Jan. 5, 2024) ("Peridot cannot use the dormant Commerce Clause to demand a constitutional right to participate in an illegal

After all, it "cannot, as the legislature may, avoid a measure" merely "because it approaches the confines of the [C]onstitution." *Cohens*, 19 U.S. at 404.

**REVERSED and REMANDED.**

---

interstate market."), *with Finch v. Treto*, 606 F. Supp. 3d 811, 834 (N.D. Ill. 2022), *aff'd in part, denied in part on other grounds*, 82 F.4th 572 (7th Cir. 2023) (concluding that plaintiffs were likely to succeed on the merits of their dormant Commerce Clause claim alleging that Illinois "discriminat[es] against nonresidents in awarding conditional dispensary licenses").  We recite these decisions not to provide merits-based guidance to the district court, but merely to affirm that federal courts can, and do, resolve similar claims without abstaining in favor of state-court adjudication.